## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **KENNETH JAMES DAUGHERTY,** | ) | |
| **#N-61174,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 14-cv-00876-NJR** |
| | ) | |
| **SALVADOR A. GODINEZ,** | ) | |
| **RICHARD HARRINGTON,** | ) | |
| **MARK GRAPPERHOUSE,** | ) | |
| **TRACY HARRINGTON,** | ) | |
| **BESTY SPILLER, LORI OAKLEY,** | ) | |
| **TIMOTHY VEATH, KEVIN PAGE,** | ) | |
| **and ANTHONY WILLS,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

This matter comes before the Court for consideration of Plaintiff Kenneth Daugherty's first amended complaint (Doc. 16), which he filed pursuant to 42 U.S.C. § 1983.[1]  In it, Plaintiff claims that prison officials at Menard Correctional Center ("Menard") conspired to retaliate against him for complaining about the conditions of his confinement.  Plaintiff now sues the Illinois Department of Corrections' ("IDOC") director and eight Menard officials[2] for depriving

---

[1] The Court dismissed Plaintiff's original complaint for failure to state a claim upon which relief may be granted on September 9, 2014 (Doc. 12).  The dismissal was without prejudice, however, and Plaintiff was granted leave to file an amended complaint on or before October 14, 2014 (Doc. 12, p. 10). Plaintiff filed his first amended complaint on October 17, 2014, which was three days after the deadline. Given that Plaintiff is a prisoner who is proceeding *pro se* in this action, the Court will accept the first amended complaint as timely and conduct a preliminary review of the pleading under 28 U.S.C. § 1915A.
[2] Defendants include Salvador Godinez, Richard Harrington, Besty Spiller, Mark Grapperhouse, Tracy Harrington, Lori Oakley, Timothy Veath, Anthony Wills, and Kevin Page.  Plaintiff did not specifically name these latter three individuals as defendants in the case caption or the list of defendants. However, the original complaint and the first amended complaint address claims against them.  For that reason, they were included as Defendants on the docket sheet in CM/ECF.

him of his rights under the First, Eighth, and Fourteenth Amendments.  He seeks monetary damages (Doc. 16, p. 1).

## Merits Review Pursuant to 28 U.S.C. § 1915A

The first amended complaint is subject to review pursuant to 28 U.S.C. § 1915A(a). Under Section 1915A, the Court is required to promptly screen prisoner complaints to filter out nonmeritorious claims.  28 U.S.C. § 1915A(a).  The Court is required to dismiss any portion of the amended complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief.  The first amended complaint survives preliminary review under Section 1915A.

## First Amended Complaint

According to the first amended complaint, Plaintiff was subjected to unconstitutional conditions of confinement at Menard in 2012 (Doc. 16, pp. 1-2, 10-13).  While housed in the North-1 Cell House in May 2012, Plaintiff was forced to live with another inmate in a one-person cell.[3]  Plaintiff was unable to move around without injury, and the cell lacked sufficient space for exercising during lockdowns.  Merely sitting up in bed caused Plaintiff to hit his head (Doc. 16, p. 10).  The cells had no furniture, other than beds.  The lighting was so dim that it was difficult to read or write (Doc. 16, p. 11).  The air vents were perpetually clogged (Doc. 16, pp. 11, 13).  The wash basin often reeked of raw sewerage, and cleaning supplies were allegedly denied (Doc. 16, p. 13).  In addition, the showers were infested with bugs[4] (Doc. 16, p. 11).

When Plaintiff complained about the conditions to other inmates and in grievances, Kevin Page (lieutenant) threatened him with segregation and disciplinary action if he did not stop

---

[3] Plaintiff claims that only one inmate should be housed in each cell in North-1 Cell House, and the cells in North-2 Cell House should each exceed thirty square feet.  According to the amended complaint, both of these housing codes were violated (Doc. 16, p. 9).
[4] Plaintiff outlines his past complaints about these conditions, which date back to 2007 (Doc. 16, p. 12).

complaining.   When Lieutenant Page next observed Plaintiff writing a grievance on May 5, 2012, he took Plaintiff's prisoner identification card.  Plaintiff's card was returned the same day.  Plaintiff then filed a grievance complaining about the conditions with Besty Spiller (head counselor), Tracy Harrington (grievance officer and warden's wife), and Lori Oakley (grievance officer) (Doc. 16, p. 3).

On May 16, 2012, Lieutenant Page pulled Plaintiff from the line and took him to see Richard Harrington (warden), who ordered officers to place Plaintiff in segregation (Doc. 16, p. 3).  On May 25, 2012, he was taken to an adjustment committee hearing before Timothy Veath (chairman) and Anthony Wills (correctional officer).  There, Plaintiff learned for the first time that he had been charged with two rule violations, including dangerous communications and insolence.  These charges stemmed from the following comment that Plaintiff made to fellow inmates: "[T]hem b*tch *ss police just be shootin like dat cause they want to shoot n*gg*rs" (Doc. 16, p. 4).  Plaintiff admitted that he made the comment.

At the same time, he pleaded "not guilty" to any rule violations (Doc. 16, p. 5).  He pointed out to Chairman Veath and Officer Wills that he had not received the ticket before the hearing.  Chairman Veath still had all three copies of it.  Plaintiff explained that, as a result, he had no opportunity to prepare a defense or call witnesses.  He requested a continuance and a lie detector test, but these requests were denied.

Ultimately, Chairman Veath and Officer Wills dropped the charge for dangerous communications but found Plaintiff guilty of insolence.  Plaintiff was punished with one month of segregation, demotion to C-grade status, and commissary restriction.  The final hearing summary was not signed by Chairman Veath or Officer Wills (Doc. 16, p. 8).

Plaintiff was placed in segregation in North-2 Cell House, where he was again subjected to unconstitutional conditions of confinement akin to those previously described. Plaintiff was denied access to cold water for thirteen days, from May 16-29, 2012 (Doc. 16, p. 5). He was deprived of his fan for twelve of these days, as temperatures soared above ninety degrees Fahrenheit (Doc. 16, pp. 6, 8).

While in segregation, Plaintiff resubmitted grievances that he had originally written on May 8, 2012. These grievances addressed Menard's "flawed grievance procedure" and staff misconduct. He addressed the grievances to Besty Spiller, Tracy Harrington, and Lori Oakley. He also submitted a grievance complaining that a Freedom of Information Act request had been ignored (Doc. 16, p. 10).

Upon his release from segregation, Warden Harrington and Lieutenant Page allegedly retaliated against Plaintiff by moving him into Menard's West Cell House, which is reserved for highly aggressive inmates (Doc. 16, pp. 6, 14). Plaintiff wrote a letter directly to Salvador Godinez, the Director of the Illinois Department of Corrections ("IDOC"), on July 19, 2012 (Doc. 16, p. 7). He complained of a conspiracy by prison officials to harass him and retaliate against him (Doc. 16, pp. 7, 15). Instead of hearing back from Director Godinez, Plaintiff received a response from another IDOC official on July 31, 2012 (Doc. 16, p. 15).

Plaintiff now sues Salvador Godinez, Richard Harrington, Mark Grapperhouse, Tracy Harrington, Besty Spiller, Lori Oakley, Timothy Veath, Anthony Wills, and Kevin Page for retaliation under the First Amendment (Count 1), denial of due process of law under the Fourteenth Amendment (Count 3), exposure to unconstitutional conditions of confinement under

the Eighth Amendment (Count 5), and common law conspiracy (Count 6).[5]   Plaintiff seeks

monetary damages (Doc. 16, p. 1).

**Discussion**

**Claims Subject to Further Review**

After carefully considering the allegations in the first amended complaint, the Court finds

that colorable claims have been articulated against Richard Harrington and Kevin Page, as

follows:

> **Count 1:**     **Richard Harrington and Kevin Page retaliated against Plaintiff for filing grievances and complaining about the conditions of his confinement, in violation of the First Amendment;**
>
> **Count 5:**     **Richard Harrington and Kevin Page subjected Plaintiff to unconstitutional conditions of confinement, in violation of the Eighth Amendment;**
>
> **Count 6:**     **Richard Harrington and Kevin Page conspired to deprive Plaintiff of his constitutional rights under the First and Eighth Amendments.**

Plaintiff shall be allowed to proceed with Counts 1, 5, and 6 against Richard Harrington

and Kevin Page.

But these claims shall be dismissed against all other defendants, including Salvador

Godinez, Mark Grapperhouse, Tracy Harrington, Besty Spiller, Lori Oakley, Timothy Veath, and

Anthony Wills.  Section 1983 creates a cause of action based on personal liability and predicated

upon fault; thus, "to be liable under [Section] 1983, an individual defendant must have caused or

participated in a constitutional deprivation."  *Pepper v. Village of Oak Park*, 430 F.3d 809, 810

(7th Cir. 2005) (citations omitted).  The allegations do not suggest that any of these defendants

---

[5] In the initial threshold order in this matter (Doc. 12), the Court dismissed the following claims with prejudice: (1) Count 2--a denial of access to courts claim; and (2) Count 4--a "racial abuse" claim.  In the first amended complaint, Plaintiff does not attempt to revive those claims, and he refers to all remaining claims by their original designations in the threshold order, as the Court instructed him to do.

were personally involved in conspiring to retaliate against Plaintiff or in subjecting him to unconstitutional conditions of confinement.

Salvador Godinez appears to have been named in this action based entirely on his supervisory role within the IDOC.  But the doctrine of *respondeat superior* does not apply to actions filed under Section 1983.  *See, e.g., Kinslow v. Pullara*, 538 F.3d 687, 692 (7th Cir. 2008).   To be held individually liable, Director Godinez must be "'personally responsible for the deprivation of a constitutional right.'"  *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (quoting *Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir. 2001)).

The first amended complaint alleges that Plaintiff addressed a single grievance to Director Godinez in July 2012, however, Director Godinez did not receive or respond to the grievance.  These allegations simply do not suggest that Director Godinez was personally involved in depriving Plaintiff of a constitutional right.

And although the doctrine of *respondeat superior* is not applicable to Section 1983 actions, "[s]upervisory liability will be found . . . if the supervisor, with knowledge of the subordinate's conduct, approves of the conduct and the basis for it."  *Lanigan v. Village of East Hazel Crest, Ill.*, 110 F.3d 467, 477 (7th Cir. 1997); *Chavez*, 251 F.3d at 651.  *See also Doyle v. Camelot Care Centers, Inc.*, 305 F.3d 603, 615 (7th Cir. 2002) (allegations that an agency's senior officials were personally responsible for creating the policies, practices, and customs that caused the constitutional deprivations suffice to demonstrate personal involvement).  The first amended complaint also does not suggest that Director Godinez created a policy, custom, or practice that resulted in the deprivation of Plaintiff's constitutional rights (or, for that matter, knew that Plaintiff's constitutional rights were being violated in any way).  In terms of individual liability, no claim has been stated against Director Godinez.

No official capacity claim has been stated against Director Godinez either. The Supreme Court has held that "neither a State nor its officials acting in their official capacities are 'persons' under [Section] 1983." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). *See also Wynn v. Southward*, 251 F.3d 588, 592 (7th Cir. 2001) (Eleventh Amendment bars suits against states in federal court for money damages); *Billman v. Ind. Dep't of Corr.*, 56 F.3d 785, 788 (7th Cir. 1995) (state Department of Corrections is immune from suit by virtue of Eleventh Amendment); *Hughes v. Joliet Corr. Ctr.*, 931 F.2d 425, 427 (7th Cir. 1991) (same); *Santiago v. Lane*, 894 F.2d 219, 220 n. 3 (7th Cir. 1990) (same). Plaintiff has filed this suit seeking only money damages and not injunctive relief. Therefore, he cannot proceed with an official capacity claim against Director Godinez at this early stage. For these reasons, Counts 1, 5, and 6 shall be dismissed against Director Godinez.

In addition, these claims shall be dismissed against Mark Grapperhouse, Tracy Harrington, Besty Spiller, and Lori Oakley. Plaintiff addressed his grievances regarding the conditions of his confinement and staff misconduct to these individuals. This, alone, does not give rise to a claim against them. The fact that a counselor, grievance officer, or even a supervisor received a complaint about the actions of another individual does not create liability. *See Sanville*, 266 F.3d at 740 (quoting *Chavez*, 251 F.3d at 651) (In order to be held individually liable, a defendant must be "personally responsible for the deprivation of a constitutional right."). No allegations in the pleading suggest that these defendants played a direct role in a constitutional violation. For this reason, Counts 1, 5, and 6 shall be dismissed against them.

Finally, these claims shall also be dismissed against Timothy Veath and Anthony Wills. Their role in this matter is limited to their involvement in Plaintiff's disciplinary proceeding; Plaintiff's related due process claim against them is addressed below. The allegations do not

implicate them in the events giving rise to Counts 1, 5, or 6.  Accordingly, Counts 1, 5, and 6 shall be dismissed against Timothy Veath and Anthony Wills.

Based on the foregoing discussion, **Counts 1, 5,** and **6** shall proceed against Richard Harrington and Kevin Page and shall be dismissed without prejudice against Salvador Godinez, Mark Grapperhouse, Tracy Harrington, Besty Spiller, Lori Oakley, Timothy Veath, and Anthony Wills.

## Claims Subject to Dismissal

### Count 3 – Due Process Claims

#### A.    Disciplinary Proceeding

The first amended complaint states no viable Fourteenth Amendment procedural due process claim against Defendants based on the issuance of a disciplinary ticket against Plaintiff that resulted in his confinement in segregation for one month.  An "inmate's liberty interest in avoiding segregation is limited."  *Hardaway v. Meyerhoff, et al.*, 734 F.3d 740 (7th Cir. 2013) (quoting *Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697 (7th Cir. 2009)).  Under a narrow set of circumstances, an inmate punished with segregation can pursue a claim for deprivation of a liberty interest without due process of law.  *See Marion*, 559 F.3d at 697-98.  But the first amended complaint does not present those circumstances.

The complaint alleges that Plaintiff was denied due process when he was issued a disciplinary ticket at his adjustment committee hearing and was found guilty of a rule violation without any opportunity to prepare a defense.  Plaintiff maintains that the hearing was neither fair nor impartial. It is not clear, however, whether Plaintiff is alleging that the disciplinary charges were unwarranted.  After all, he admits in the pleading that he made the statement giving rise to the charges.  Despite this admission, Plaintiff pleaded "not guilty" to the rule violations.

Either way, these allegations do not support a due process claim.  "[D]ue process safeguards associated with prison disciplinary proceedings are sufficient to guard against potential abuses[, and a] hearing before a presumably impartial Adjustment Committee terminates an officer's possible liability for the filing of an allegedly false disciplinary report." *Hadley v. Peters*, 841 F. Supp. 850, 856 (C.D. Ill. 1994), aff'd, 70 F.3d 117 (7th Cir. 1995) (citations omitted).

The first amended complaint alleges that Plaintiff's disciplinary hearing was *not* impartial, however, no factual allegations are offered in support of this bald assertion. Without factual support, no claim is stated because the allegations fail to satisfy the pleading standards set forth in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Turning to the hearing itself, an inmate facing disciplinary charges must be given: (1) advance written notice of the charges against him; (2) the opportunity to appear before an impartial hearing body to contest the charges; (3) the opportunity to call witnesses and present documentary evidence in his defense (if prison safety allows and subject to the discretion of correctional officers); and (4) a written statement summarizing the reasons for the discipline imposed.  *See Wolff v. McDonnell*, 418 U.S. 539, 563-69 (1974); *Cain v. Lane*, 857 F.2d 1139, 1145 (7th Cir. 1988).  In addition, the decision of the adjustment committee must be supported by "some evidence."  *Black v. Lane*, 22 F.3d 1395 (7th Cir. 1994).  In other words, courts must determine whether the decision of the hearing board has some factual basis.  *Webb v. Anderson*, 224 F.3d 649 (7th Cir. 2000).  Even a meager amount of supporting evidence is sufficient. *Scruggs v. Jordan*, 485 F.3d 934, 941 (7th Cir. 2007).

No doubt, Plaintiff's disciplinary hearing raises due process concerns.  These concerns are ameliorated, however, by Plaintiff's own admission that he made the statement giving rise to

the ticket; this admission constitutes "some evidence" supporting the committee's decision. Here, again, the first amended complaint falls short of stating any procedural due process claim.[6]

The Court's analysis of Plaintiff's due process claim does not end there. Whether a protected liberty interest is implicated by Plaintiff's confinement in segregation depends on whether that confinement "imposed an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Hardaway*, 734 F.3d at 743 (citing *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). Courts must consider two factors in determining whether disciplinary segregation imposes atypical and significant hardships: "the combined import of the duration of the segregative confinement *and* the conditions endured." *Id.* at 743 (citing *Marion*, 559 F.3d at 697-98) (emphasis in original).

The Seventh Circuit has held that "relatively short terms of segregation rarely give rise to a prisoner's liberty interest" in the absence of exceptionally harsh conditions. *Id.* at 743. For these relatively short periods, inquiry into the specific conditions of confinement is unnecessary. *See, e.g., Holly v. Woolfolk,* 415 F.3d 678, 679 (7th Cir. 2005) (2 days); *Townsend v. Fuchs*, 522 F.3d 765, 766 (7th Cir. 2008) (59 days); *Hoskins v. Lenear*, 395 F.3d 372, 374-75 (7th Cir. 2005) (60 days) *Thomas v. Ramos*, 130 F.3d 754, 761 (7th Cir. 1998) (holding that no liberty interest was implicated when considering prisoner's twelve-year sentence) (70 days). Plaintiff's punishment with thirty days in segregation does not give rise to a liberty interest.

This is particularly true when considering the conditions he endured. Many of the conditions, in isolation, would not even support an Eighth Amendment claim. It is the conditions, in combination, that Plaintiff is challenging under the Eighth Amendment in Count 5.

---

[6] Similarly, Plaintiff's due process claim does not hinge on the denial of his request for a polygraph test, and this argument also would be meritless. *See, e.g., Jemison v. Knight*, 244 Fed. Appx. 39, 42 (7th Cir. 2007) (citing *Freitas v. Auger*, 837 F.2d 806, 812 n. 13 (8th Cir. 1988) (holding that prisoners are not entitled to polygraph tests in disciplinary hearings)).

Still, these conditions are not described as being any harsher than the conditions Plaintiff faced in the general population. Under the circumstances presented, the Court finds that the first amended complaint states no procedural due process claim against Defendants.

**B.    Mishandling of Grievances**

The first amended complaint also articulates no viable Fourteenth Amendment procedural due process claim against Defendants for mishandling, delaying, or denying Plaintiff's grievances. The Seventh Circuit has made it clear that "a state's inmate grievance procedures do not give rise to a liberty interest protected by the Due Process Clause." *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996). The Constitution requires no procedure at all. Thus, the failure of state prison officials to follow their own procedures does not, of itself, violate the Constitution. *Maust v. Headley*, 959 F.2d 644, 648 (7th Cir. 1992); *Shango v. Jurich*, 681 F.2d 1091, 1100-01 (7th Cir. 1982). Because Defendants had no constitutional duty to follow the prison's grievance procedures, their alleged failure to do so does not give rise to a due process claim.

**C.    Equal Protection**

Finally, the first amended complaint fails to include sufficient allegations to support a substantive due process claim against Defendants. The pleading mentions "equal protection." It also mentions a "racial" disciplinary ticket (i.e., a ticket that quotes Plaintiff's racial comments). Beyond this, the pleading does not develop any sort of equal protection claim against Defendants. The pleading fails to include sufficient allegations to satisfy basic pleading standards under Federal Rule of Civil Procedure 8 and *Twombly*.

In summary, the first amended complaint articulates no viable Fourteenth Amendment due process claim against Defendants. **Count 3** shall be dismissed without prejudice.

**Pending Motion**

Plaintiff has filed a motion for attorney representation (Doc. 4), which shall be **REFERRED** to a United States Magistrate Judge for a decision.

**Disposition**

**IT IS HEREBY ORDERED** that **COUNT 3** is **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted.  (Counts 2 and 4 were previously dismissed with prejudice in the Court's initial order (Doc. 12)).

**IT IS ALSO ORDERED** that Defendants **SALVADOR GODINEZ, MARK GRAPPERHOUSE, TRACY HARRINGTON, BESTY SPILLER, LORI OAKLEY, TIMOTHY VEATH,** and **ANTHONY WILLS** are **DISMISSED** without prejudice.

**IT IS FURTHER ORDERED** that with regard to **COUNTS 1, 5,** and **6**, the Clerk of Court shall prepare for Defendants **RICHARD HARRINGTON** and **KEVIN PAGE**:  (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons).  The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff.  If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

**IT IS ALSO ORDERED** that, with respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address.

This information shall be used only for sending the forms as directed above or for formally effecting service.  Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

**IT IS ORDERED** that Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court.  Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel.  Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge **Donald G. Wilkerson** for further pre-trial proceedings, including a decision on Plaintiff's motion for attorney representation (Doc. 4).

Further, this entire matter is **REFERRED** to United States Magistrate Judge **Wilkerson** for disposition, as contemplated by Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *should all the parties consent to such a referral.*

**IT IS FURTHER ORDERED** that if judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give

security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff. Local Rule 3.1(c)(1)

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts.  This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs.  Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution.  *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED:  February 25, 2015**

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**