IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

KENNETH JAMES DAUGHERTY,       )
                               )
    Plaintiff,                 )
                               )
v.                             )   Case No. 3: 14-cv-876-DGW
                               )
RICHARD HARRINGTON and KEVIN B.)
PAGE,                          )
                               )
    Defendants.                )

## ORDER

**WILKERSON, Magistrate Judge:**

Now pending before the Court is the motion for summary judgment filed by Defendants (Doc. 75) and the response thereto (Doc. 77). For the reasons set forth below, the motion is **GRANTED**.

### INTRODUCTION

Plaintiff, Kenneth James Daugherty, an inmate currently incarcerated at the Hill Correctional Center, filed suit pursuant to 42 U.S.C. § 1983 on June 26, 2014 (Doc. 1). He alleged that he was retaliated against and subjected to unconstitutional conditions of confinement, among other things, while he was housed at the Menard Correctional Center beginning in May 2012 (Doc. 17). His complaint was screened in accordance with 28 U.S.C. § 1915A and he was permitted to proceed on the following claims:

> Count 1: Richard Harrington and Kevin Page retaliated against Plaintiff for filing grievances and complaining about the conditions of his confinement, in violation of the First Amendment;
>
> Count 5: Richard Harrington and Kevin Page subjected Plaintiff to unconstitutional conditions of confinement, in violation of the Eighth Amendment;

> Count 6: Richard Harrington and Kevin Page conspired to deprive Plaintiff of his constitutional rights under the First and Eighth Amendments.

(Doc. 17).

Defendants now seek summary judgment on Plaintiff's claims. Defendants argue that they were unaware of any grievances that Plaintiff may have written and that the conditions of his confinement were either unknown or not unconstitutional. Plaintiff counters that both Warden Harrington and Lieutenant Page were aware of the conditions of his cell house because they regularly toured the area. He also argues that when he complained and attempted to write grievances about the conditions, he was issued a false disciplinary ticket and sent to segregation.

## BACKGROUND

It is undisputed that Warden Harrington has no independent recollection of Plaintiff during his incarceration at the Menard CC from 2012 to 2014 (Doc. 77-4, p. 36). In May 2012, Harrington was the assistant warden of operations and then was promoted to warden in 2013 (*Id.* 26). He made daily rounds of Menard including the North cell house: the purpose of the rounds was to talk to inmates and ensure staff was performing their duties (*Id.* 28). Harrington does not recall specific inmate complaints from that time period about the conditions of confinement (*See e.g. Id.* pp. 59-60). In 2012, Page was a correctional Lieutenant assigned to the North 1 cell house (Doc. 77-5, p. 17). He made daily rounds in order to supervise staff and inmates (*Id.* 43). Page has no independent memory of Plaintiff except that he recalls giving him a disciplinary ticket (in May 2012) that led to him being placed in segregation (*Id.* 20, 55-6). Page does not recall specific complaints or grievances about Plaintiff's conditions of confinement in 2012 (*Id.* 32).

Beginning in 2009, Plaintiff started complaining about on-going, undesirable conditions of his confinement in the North cell house at Menard: blocked vents, dim lighting, undersized cell, vermin, filthy showers, raw sewage in his sink, lack of cold drinking water, and the lack of

cleaning supplies, among other things (Doc. 77-3, pp. 11-12).[1]  Plaintiff never actually spoke to Page about the majority of the conditions of his confinement – although, he did speak to him once about not having cold water while he was in segregation (around May 16, 2012) (*Id*. 18-19, 41).[2] He also believes Page overheard conversations amongst inmates about the conditions (*Id*. 51). Plaintiff also did not speak to Harrington about his complaints (*Id*. 23-24, 49-51).  He made his complaints about his conditions in "black and white" – meaning that he wrote "grievances to the attorney generals, mandamuses" (*Id*. 49).  Although his testimony is not clear, Plaintiff also wrote grievances about the conditions of his confinement, before or after being placed in segregation that named Harrington and Page (*Id*. pp. 22-24, 58).  Plaintiff is "sure" that they saw his grievances although he never spoke to them about the grievances and he does not know if they read them (*Id*. 24-25).

Plaintiff believes that Page and Harrington knew about the conditions of his confinement because they were "obvious" and because Plaintiff "assume[d he] read the paperwork that was circulating" (*Id*. 19).  He believes they are responsible for the conditions of his confinement because "they're authority.  They responsible for the conditions of the entire prison . . . . They are who we bring our issues to" (*Id*. 29-30).  As to Page, Plaintiff testified that:

> Page, after a number of guys had complained about the filth in the shower. . . . When our gallery went in there – and a lot of guys wouldn't even get in.  They just stood around in their clothes because they didn't want to get in that nasty shower, and we came back out.  We were all talking all together.  Page threatened us get off the gallery or we are going to seg, he was going to walk us to seg.  Get off the gallery talking about the conditions.

---

[1] Plaintiff's "inmate occupancy history" reveals that he was housed at Menard, at various locations including the North cell house, continuously from May 19, 1999 to June 5, 2013 (Doc. 77-2).

[2] In response, Page told Plaintiff that it could get a lot worse – after this comment, Plaintiff was placed in a cell with a steel door on May 31, 2012 while in segregation and he was then moved to the undesirable West house (Doc. 77-3, p. 65).

> I can tell you – and there's no lighting over there, so I was sitting at the bars on my box writing a grievance. Page walked right up, politely looked at me and told me stop writing grievance. . . .
>
> . . . I had already had a mandamus pending on them for some of the same issues in the 20th circuit court down there for the same issues. So they knew.

(*Id*. 17-18).

This event occurred on May 3, 2012 (*Id*. 20).

Plaintiff believes that a result of these complaints (about the conditions in North 1), Page wrote him a false disciplinary ticket on May 16, 2012 (*Id*. 53). On that date, Plaintiff was in the gym line and he asked another inmate to "walk up, to walk up in the line" (*Id*. 62). Page then took Plaintiff out of the line and took him to see Harrington (*Id*.). Harrington asked Plaintiff what he had said to the other inmate, and when Plaintiff answered, Harrington told Page to take him to segregation (*Id*. 62-63).[3] After he was released from segregation, he was sent to the West house, "the most highly aggressive dangerous cell house down there" (*Id*. 63).

### STANDARD

Summary judgment is proper only if the moving party can demonstrate "that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." FEDERAL RULE OF CIVIL PROCEDURE 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005); *Black Agents & Brokers Agency, Inc. v. Near North Ins. Brokerage, Inc.*, 409 F.3d 833, 836 (7th Cir. 2005). The moving party bears the burden of establishing that no material facts are in

---

[3] The incident report states that Page heard Plaintiff state: "them bitch-ass police just be shootin like dat cause they want to shoot some niggers" (Doc. 77-7, p. 2). He was charged with the offenses of insolence and dangerous communications. At least two other inmates in line state that Plaintiff did not make the statement (Doc. 77-6, p. 3; 77-9, p. 2). Plaintiff did not call them as witnesses at the hearing. Plaintiff was found guilty of insolence only by the adjustment committee (comprised of Veath and Wills who are not Defendants herein) and sentenced to 1 month of C Grade, segregation, and commissary restrictions (Doc. 77-10, p. 2). Plaintiff's stint in segregation was in the North 2 cell house.

genuine dispute; any doubt as to the existence of a genuine issue must be resolved against the moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970); *Lawrence v. Kenosha County*, 391 F.3d 837, 841 (7th Cir. 2004). A moving party is entitled to judgment as a matter of law where the non-moving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex,* 477 U.S. at 323. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* The Seventh Circuit has stated that summary judgment is "the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Steen v. Myers*, 486 F.3d 1017, 1022 (7th Cir. 2007) (quoting *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005) (other citations omitted)).

## DISCUSSION

In Count 1, Plaintiff claims that Warden Harrington and Officer Page retaliated against him because he complained about the conditions of his confinement. "An act taken in retaliation for the exercise of a constitutionally protected right violates the Constitution." *DeWalt v. Carter*, 224 F.3d 607, 618 (7th Cir. 2000). Plaintiff has a First Amendment right to file grievances and lawsuits. *Id.; Watkins v. Kasper*, 599 F.3d 791, 798 (7th Cir. 2010). In order to prevail on a claim of retaliation, Plaintiff must first show that: "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation likely to deter such activity; and (3) the First Amendment activity was at least a motivating factor in the decision to impose the deprivation." *Hawkins v. Mitchell*, 756 F.3d 983, 996 (7th Cir. 2014) (citations omitted). Thus, Plaintiff must set forth a chronology of events and show that his litigation activities were a motivating factor for an adverse action. *DeWalt*, 224 F.3d at 618. In this context, an adverse action is one that would

chill or deter a person of ordinary firmness from exercising a First Amendment right. *Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982). Once Plaintiff meets his burden, the burden shifts to Defendants to show that the harm would have occurred anyway. *Greene v. Doruff*, 660 F.3d 975, 979 (7th Cir. 2011).

Defendants argue that they do not recall receiving any grievances or complaints from Plaintiff and that Plaintiff cannot establish a causal connection between any such complaints and his transfer to the West cell house. Plaintiff did not orally complain to either Defendant about the conditions of his confinement. He did file grievances and make other complaints; however, there is no evidence that either Defendant was aware of these grievances or complaints. Indeed, any such grievances are not a part of the record before the Court. Instead, Plaintiff argues that they must have known about the conditions of his confinement because they toured the gallery. Even if Defendants were aware of the conditions of Plaintiff's cell, prior to his placement in segregation on May 16, 2012, there is no evidence that they were aware that Plaintiff was *complaining* about the conditions in a manner that would warrant First Amendment protection. *See Tomanovich v. City of Indianapolis*, 457 F.3d 656, 668-69 (7th Cir. 2006) (noting in an employment context that the employer "must have actual knowledge of the complaint" to prevail on a retaliation claim). At least with respect to Harrington, there is no evidence that he was aware of any of Plaintiff's grievance writing or complaining.

As to Page, Plaintiff states that around May 3, he told Plaintiff and a group of inmates not to congregate in the gallery and complain about the showers. Standing around a gallery and complaining about showers to other inmates can hardly constitute First Amendment Activity. *See Watkins v. Kasper*, 599 F.3d 791, 798 (7th Cir. 2010) (finding that while "a formal written grievance or a courteous, oral conversation" is protected First Amendment activity,

confrontational or belligerent speech meant to intimidate is not). While certainly oral complaints can constitute First Amendment activity, *Pearson v. Welborn*, 471 F.3d 732, 741 (7th Cir. 2006), the evidence is sketchy at best that Plaintiff himself was actually complaining to Page about the showers. And, any statement that the inmates would be sent to segregation was directed at all the inmates speaking, not just Plaintiff, and was in relation to the inmates standing on the gallery. That same day, however, Page told Plaintiff to stop writing a grievance – which is a First Amendment activity. As such, there must be some showing of a deprivation and a causal relationship between the First Amendment activity and the deprivation.

The only deprivation that Plaintiff suffered was the false disciplinary ticket that led to segregation. The conditions of Plaintiff's segregation cell, however, cannot represent deprivation in the context of this count: there is no evidence that Page (or Harrington) had any control over where Plaintiff would be housed while in segregation or otherwise. As to the disciplinary ticket, there is disputed evidence regarding the veracity of the ticket Plaintiff received on May 16, 2014. At this stage of the proceedings, Plaintiff's version of events must be credited. As such, the evidence reveals that he was in line for the gym, that he said something innocuous to another inmate, and that Defendant Page, with Harrington's approval, wrote him a disciplinary ticket that was false. This false ticket led to 30 days in segregation (in conditions that were undesirable) and transfer to a violent section of the prison. Writing a false ticket that could lead to dire consequences could chill speech.

Plaintiff argues that the comments to the inmates talking in the gallery, the statement to Plaintiff to stop writing a grievance, and the short time within which Plaintiff was issued a ticket (May 16th) from the statements (May 3) shows that Plaintiff's speech was a motivating factor in the adverse action. The Seventh Circuit has held that a plaintiff's reliance on suspicious timing to

establish a prima facie retaliation claim will "rarely be sufficient in and of itself to create a triable issue." *Stone v. City of Indianapolis Pub. Utils. Div.*, 281 F.3d 640, 644 (7th Cir. 2002) (citations omitted). Moreover, "mere speculation or conjecture will not defeat a summary judgment motion." *Rockwell Automation, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 544 F.3d 752, 757 (7th Cir. 2008). Suspicious timing is all that Plaintiff relies on: he made some oral comments and was told to stop writing a grievance – two weeks later he was issued a false disciplinary ticket. There is no other evidence showing a connection between the actions on May 3 and the disciplinary ticket on May 16. Moreover, there is no showing, other than timing, regarding Plaintiff's subsequent placement behind a steel door. First, there is no showing that Page (or Harrington) had any involvement in Plaintiff's cell placement.[4] And, the timing between Page's comment, on May 16th (when Plaintiff already was in segregation) that "things could get much worse," and Plaintiff's placement behind a steel door on May 31st, is insufficient to establish retaliation. Plaintiff's speculation as to the causal relationship between unrelated events is insufficient to support a retaliation claim.

In Count 2, Plaintiff claims that Defendants subjected him to unconstitutional conditions of confinement. Inmates are entitled to "humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quotations marks and citations omitted). However,

---

[4] The Court also has doubts that Plaintiff's subsequent housing can be attributed to Page or Harrington. Neither had any involvement in Plaintiff's term of segregation and there is no showing that anyone on the adjustment committee or anyone responsible for Plaintiff's cell placement had any awareness of his grievances or other First Amendment activity. *See Lalvani v. Cook County, Illinois*, 269 F.3d 785, 790 (7th Cir. 2001) ("When an adverse employment action follows close on the heels of protected expression, *and the plaintiff can show that the person who decided to impose the adverse action knew of the protected conduct*, the causation element of the *prima facie* case is typically satisfied." (emphasis added)).

> the Eighth Amendment does not provide a fixed formula for determining whether the effect of particular conditions constitutes cruel and unusual punishment, but rather draws its meaning from the evolving standards of decency that mark the progress of a maturing society. Conditions, alone or in combination, that do not, however, fall below the contemporary standards of decency, are not unconstitutional, and to the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society.

*Caldwell v. Miller*, 790 F.2d 589, 600 (7th Cir. 1986) (internal editing marks and citations omitted). Thus, the Eighth Amendment is violated when:

> (1) there is a deprivation that is, from an objective standpoint, sufficiently serious that it results in the denial of the minimal civilized measure of life's necessities, and
>
> (2) where prison officials are deliberately indifferent to this state of affairs.

*Gray v. Hardy*, 826 F.3d 1000, 1005 (7th Cir. 2016) (quotation marks and citation omitted). As to the first objective element, exposing inmates to extreme temperatures coupled with the inability to mitigate the condition, may violate the Eighth Amendment. *See White v. Monohan*, 326 Fed.Appx. 385, 387 (7th Cir. 2009) (discussing allegations of in excess of 110°F temperatures with lack of ventilation that caused an inmate to vomit blood); *Jordan v. Milwaukee County*, ___ Fed.Appx. ___, 2017 WL 778365, *2 (7th Cir. 2007) (discussing freezing temperatures during two consecutive winters with limited clothing to combat the cold). While the problems with Plaintiff's cell may not be unconstitutional if taken individually, a jury may find that in combination, the conditions fell below modern standards of decency.

If Plaintiff was able to show that the conditions of confinement were objectively serious, he must also show that each of Defendants were deliberately indifferent to the risk to his health and safety. Plaintiff must demonstrate that the official was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and that the official actually drew that inference. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the

usual ways, including inference from circumstantial evidence, . . . and a fact finder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Farmer*, 511 U.S. at 842 (1994) (citations omitted). A plaintiff does not have to prove that his complaints were "literally ignored," only that "the defendants' responses to it were so plainly inappropriate as to permit the inference that the defendants intentionally or recklessly disregarded his needs." *Hayes v. Snyder*, 546 F.3d 516, 524 (quoting *Sherrod v. Lingle*, 223 F.3d 605, 611 (7th Cir. 2000)). "Even if a defendant recognizes the substantial risk, he is free from liability if he 'responded reasonably to the risk, even if the harm ultimately was not averted.'" *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010) (quoting *Farmer*, 511 U.S. at 843).

Plaintiff offers a list of problems with his North 1 and North 2 cells. He further states that these conditions were "obvious" to anyone, that is Defendants, touring the gallery. As such, a jury could infer personal liability by finding that Defendants knew about the unconstitutional condition and affirmatively turned a blind eye to the condition. *See Perez v. Fenoglio*, 792 F.3d 768, 781-782 (7th Cir. 2015). Plaintiff's speculation that the conditions were obvious is belied by any evidence that they were recognized by anyone other than himself. Again, it should be noted that Plaintiff did not verbally complain about the conditions of his confinement to Harrington or Page nor is there any evidence that they were aware of any of his written complaints. These conditions -- clogged ventilation, lack of lighting, vermin, sewage buildup, no cleaning supplies, undersized cells that would cause injury, dirty mattress, lack of cold drinking water, or a filthy shower -- would not have been obvious unless either Defendant actually *inspected* Plaintiff's cell and other areas rather than simply walking down the gallery. As to the heat, there is no evidence that either Defendant was aware of excessive temperatures or that nothing was being done to alleviate any heat. And, Plaintiff also offers no medical evidence that any of the

conditions he suffered from were the result of exposure to heat. *See e.g. Green v. Walker*, 398 Fed.Appx. 166, 168-169 (7th Cir. 2010).

Even if a jury were to find that any of these conditions were obvious to either Page or Harrington, as with the objective prong above, there is no evidence that any of them turned a blind eye to an excessive risk to Plaintiff's health. First, there is no evidence that either of Defendants were aware that Plaintiff was susceptible to health complications because of excessive heat or other conditions. Second, "[p]laintiff still has the burden of demonstrating that [any] communication, in its content and manner of transmission, gave the prison official sufficient notice to alert him or her to 'an excessive risk to inmate health or safety.'" Vance v. Peters, 97 F.3d 987, 993 (7th Cir. 1996 (quoting Farmer, 511 U.S. 837). There is no evidence of any actual communication and Plaintiff only speculates that Defendants were passively aware of the risk to his health and safety because they walked the gallery. There is no evidence that he explained the risk to his health in any manner or that such a risk was obvious. No reasonable jury would be able to discern whether Defendants were even negligent based on the evidence before the Court.

The one complaint Plaintiff did make to Page was that he had no cold drinking water around May 16. The record does not reveal that Plaintiff made Page aware that this was a continuing condition –indeed the evidence shows that Plaintiff stopped saying anything further to Page after this one complaint. While the lack of cold drinking water for a short period of time may have been inconvenient, it is not sufficiently serious to support an Eighth Amendment claim. "The Constitution does not require prison officials to provide the equivalent of hotel accommodations or even comfortable prisons. Occasional discomfort is part of the penalty that criminal offenders pay for their offenses against society." *Lunsford v. Bennett,* 17 F.3d 1574, 1581 (7th Cir.1994) (internal citations and quotation marks omitted). In sum, there is no evidence from

which a reasonable jury would find that Defendants turned a blind eye to a sufficient risk of harm due to cell conditions.

Finally, in Count 3, Plaintiff claims that Defendants conspired to deprive him of his rights. While civil conspiracy claims are cognizable under § 1983, *see Lewis v. Washington*, 300 F.3d 829, 831 (7th Cir. 2002) (recognizing conspiracy claim under section 1983), conspiracy is not an independent basis of liability in § 1983 actions. *See Smith v. Gomez*, 550 F.3d 613, 617 (7th Cir. 2008) (citing *Cefalu v. Village of Elk Grove*, 211 F.3d 416, 423 (7th Cir. 2000)). "For liability under § 1983 to attach to a conspiracy claim, defendants must conspire to deny plaintiffs their constitutional rights." *Hill v. Shobe*, 93 F.3d 418, 422 (7th Cir. 1996). In order to succeed on his conspiracy claim, Plaintiff must demonstrate: (1) that Defendants had an express or implied agreement to deprive him of his constitutional rights, and (2) that he was deprived of his constitutional rights by Defendants' overt actions in furtherance of the agreement. *Beaman v. Freesmeyer*, 776 F.3d 500, 510 (7th Cir. 2015) (citing *Scherer v. Balkema*, 840 F.2d 437, 441-42 (7th Cir. 1998)). Because no jury would find that Defendants violated his constitutional rights, Plaintiff's conspiracy claim must fail as a matter of law.

In light of these conclusions, Defendants also are entitled to qualified immunity. Qualified immunity acts as a protective shield for "government officials against suits arising out of their exercise of discretionary functions 'so long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated.'" *Jones v. Wilhelm*, 425 F.3d 455, 460 (7th Cir. 2005) (quoting *Anderson v. Creighton*, 483 U.S. 635, 638 (1987)). Officers who act unreasonably, however, are not entitled to use qualified immunity as a defense. *Sornberger v. City of Knoxville, Ill.*, 434 F.3d 1006, 1014 (7th Cir. 2006). Where it is clear that no constitutional violation has occurred, it is unnecessary to consider closely analyze whether the

defendants are entitled to qualified immunity. Estate of Phillips v. City of Milwaukee, 123 F.3d 586, 597 (7th Cir. 1997). As held above, no jury would find that Plaintiff's constitutional rights were violated. Defendants are accordingly entitled to qualified immunity.

## CONCLUSION

For the foregoing reasons, the Motion for Summary Judgment filed by Defendants is **GRANTED**. To the extent that Plaintiff seeks summary judgment on his claim as set forth in his response, it is **DENIED**. The Clerk of Court is **DIRECTED** to enter judgment in favor of Defendants and against Plaintiff on Counts 1, 2, and 3 and to terminate this matter accordingly.

**DATED: September 27, 2017**

**DONALD G. WILKERSON**
**United States Magistrate Judge**